FILED

August 16, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 7:55 A.M.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Robert Poellnitz | ) Docket No. 2016-01-0135 |
| | ) |
| v. | ) State File No. 64362-2014 |
| | ) |
| Resolute Forest Products, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Audrey A. Headrick, Judge | ) |

---

### Affirmed and Remanded-Filed August 16, 2016

---

In this interlocutory appeal, the employee suffered a work-related left knee injury that was accepted by the employer as compensable and for which the employer provided benefits. The employee alleged that, while undergoing a functional capacity evaluation related to the left knee injury, he suffered an injury to his cervical spine. The employer denied the cervical injury claim, asserting the employee failed to give timely notice of the cervical injury and failed to establish causation. At the employee's request, the trial court entered an interlocutory order based on a review of the file without a hearing, finding that the employee was unlikely to prevail at a hearing on the merits and denying his request for medical and temporary disability benefits related to his alleged cervical injury. The employee has appealed. We affirm the trial court's decision and remand the case for further proceedings as may be necessary.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

G. Brent Burks, Chattanooga, Tennessee, for the employee-appellant, Robert Poellnitz

Bridget Willhite, Athens, Tennessee, for the employer-appellee, Resolute Forest Products

### Factual and Procedural Background

Robert Poellnitz ("Employee") is a fifty-two-year-old resident of Muscle Shoals, Alabama. He was employed by Resolute Forest Products ("Employer") on August 15,

2014, when he suffered an injury to his left knee arising primarily out of and occurring in the course and scope of his employment. Employer accepted the claim as compensable and provided medical care with Dr. Chad Smalley as the authorized physician, including surgery performed on September 30, 2014.[1] At the time Employee came under his care for the left knee injury, Dr. Smalley was already providing medical care for a left shoulder condition unrelated to Employee's work and for which Employee underwent surgery on December 12, 2014. Although Employee treated simultaneously for the two conditions, Dr. Smalley's office notes generally reflect different dates of treatment and follow-up appointments for each condition. However, as noted below, on July 29, 2015, reports were prepared for two office visits, one concerning Employee's work-related left knee condition and the other concerning Employee's left shoulder condition that was not work-related.

Following a course of medical treatment for the left knee injury that included post-operative follow-up visits every four to six weeks after Employee's September 30, 2014 surgery, Employee returned to Dr. Smalley on July 29, 2015, at which time Dr. Smalley ordered a functional capacity evaluation ("FCE") to assess Employee's ability to return to his employment and what, if any, restrictions should be placed upon his activities as a result of the left knee injury. In a separate report also dated July 29, 2015, addressing Employee's left shoulder condition, Dr. Smalley stated that Employee "reports some neck pain and numbness/tingling down into the hand."

Employee acknowledges a history of back and neck complaints for which he sought chiropractic treatment with Dr. Bruce Thompson. The record on appeal includes voluminous treatment notes with Dr. Thompson dating back to 2005 in which Employee complained of low back and neck pain as well as occasional left shoulder pain. However, the chiropractic records do not include complaints of pain extending to Employee's left hand and fingers until August 13, 2015, which was approximately two weeks before his alleged cervical injury and approximately two weeks after Dr. Smalley documented "numbness/tingling down into the hand." According to the report of Employee's August 13, 2015 visit with the chiropractor, Employee reported "he was doing better until Wednesday, July 22, 2015 when his left shoulder blade, neck, left hand and little finger and ring finger began hurting and became weak after preforming [sic] FCE at work."

Employee did not participate in an FCE until two weeks later on August 25, 2015.[2] The physical therapist conducting the evaluation issued a report the following day

_____

[1] This appeal does not present issues concerning benefits requested or provided relative to the left knee injury. Except to the extent necessary to address Employee's alleged August 25, 2015 cervical injury, we forego a discussion of the circumstances surrounding Employee's left knee injury and the medical treatment he received for that injury.

[2] The record on appeal contains no information regarding why or how the August 13, 2015 medical record could document an injury during an FCE that had not yet occurred.

2

indicating Employee had given a reliable effort and was able to work in the heavy physical demand category. The FCE report assigned no permanent physical restrictions, and it made no mention of Employee's complaining of increased neck pain or pain and numbness in his left arm, hand, or fingers.

Following the FCE, Employee returned to his chiropractor on August 28, 2015. The report of that visit does not mention the FCE or any new injury, but stated "since his last office visit, he is doing worse." It noted that Employee's low back "has been hurting a couple of weeks," that "[w]hen he rolls over in bed he has sharrp [sic] pain in low back," and that his "left shoulder is painful and hand is weak." The "assessment" stated "[t]he prognosis for this patient at this time is good because the patient is experiencing an exacerbation and has responded well to conservative chiropractic therapy in the past."

Employee sought treatment with his primary care physician, Dr. Timothy Ashley, on August 31, 2015, complaining of upper back pain, most prominent in the mid-thoracic spine, with constant and sharp pain radiating to the left upper arm. The report stated "[t]his is a chronic, but intermittent problem with an acute exacerbation." It noted that Employee "states that the current episode of pain started 7 days ago. Associated symptoms include numbness in the left hand . . . DID FUNCTIONAL STUDY LAST WEEK 8/25/15–THEN 3 DAYS LATER NOTED NUMBNESS IN LEFT ARM– CHIROPRACTOR–ADJUSTED WITH NO NRELIEF [sic]–NOT SLEEPING IN 3 DAYS." Dr. Ashley administered a trigger point injection and ordered a cervical MRI.

Employee returned to Dr. Smalley on September 9, 2015. Contrary to his apparent previous practice, Dr. Smalley addressed both the left shoulder condition and the left knee condition in the same report. With respect to the left shoulder condition, Dr. Smalley noted that Employee complained of "persistent numbness from the left hand to elbow," that Employee "is scheduled for an EMG today," and that he "recently underwent a cervical spine MRI per his PCP." Additionally, the report stated that Dr. Smalley "recommend[s] that he follow up with a cervical spine specialist after the EMG for evaluation of his cervical spine," and noted that Employee is "to see Jason C. Eck, DO . . . on or around 09/16/2015." Addressing the left knee, Dr. Smalley's September 9, 2015 report noted that Employee reached maximum medical improvement for the knee injury and was released to return to work. The report does not mention the August 25, 2015 FCE or a recent cervical injury.

The parties dispute when Employer learned of the alleged August 25, 2015 work-related cervical injury. After receiving the report of Employee's September 9, 2015 visit with Dr. Smalley noting that Employee was to see Dr. Eck, Employer did not provide a panel of cervical spine specialists, nor did Employer authorize Dr. Eck to provide treatment. On September 22, 2015, Employee sought treatment with Dr. Scott Hodges,[3] a

---

[3] In two instances, the trial court's order refers to "Dr. Jolley." There is no evidence in the record that

physician in practice with Dr. Smalley and Dr. Eck. The report of the initial visit with Dr. Hodges noted that Employee complained of neck and bilateral arm pain and stated "all the left shoulder pain and weakness began while doing the [FCE] for [a left knee] repair." The report stated that "[t]he patient denies any prior history," and noted that Employee reported "numbness/tingling of the left arm and weakness of the left hand." Additionally, the report stated "[t]he patient denies symptoms are accident related or related to a workers' compensation injury." However, it also included contradictory information, stating "[t]his appears to be workers' compensation related injury (lifting with FCE)." Dr. Hodges noted "evidence of acute nerve injury to two muscles of the C8 myotome, consistent with acute radiculopathy," and he ordered another cervical MRI due to the poor quality of the earlier MRI, which he indicated was "not usable for diagnosis." Dr. Hodges also noted "findings consistent with moderate severity left carpal tunnel syndrome," adding that Employee "has had previous treatment for right carpal tunnel syndrome."

It appears Employee returned to Dr. Hodges on September 29, 2015, although the note from that office visit is not included in the record. On October 14, 2015, Dr. Hodges performed an anterior cervical discectomy with foraminotomy at C6-T1, noting in the surgical record that the patient has had "a work-related injury." Employee has continued to seek follow-up care since his surgery.

Employer states in both its position statement submitted to the trial court and in its brief on appeal that Employee reported his alleged cervical injury on September 25, 2015, noting that Employee gave the notice to Employer's on-site nurse in the process of seeking clearance from the nurse to return to work from the knee injury. Despite this notice, Employer did not provide a panel of physicians for the alleged cervical injury until approximately November 20, 2015, when it presented a panel of three physicians that it described in its position statement was "for the purpose of having a physician opine as to whether [Employee's] neck injury was causally connected to his employment."

Employee selected Dr. Timothy Strait from the panel and attended an appointment with him on January 4, 2016. Dr. Strait's report stated that Employee was seen "primarily for an Independent Medical Evaluation." It stated that in the process of performing the FCE following his knee injury, Employee "experienced pain radiating down his left arm in a radicular fashion." Significantly, the report stated that "[h]e had never experienced this type of pain before, although he did report neck pain in the past which frequently led to chiropractic visits." Dr. Strait commented in the report that he "[found] it interesting that [Employee] underwent a two level decompression involving C6-7 and C7-T1 on the left for what is clearly a singular C8 left nerve root compression

---

Employee treated with Dr. Jolley, and we presume the trial court's references to Dr. Jolley were intended to be references to Dr. Hodges.

syndrome," but he concluded "[n]evertheless, the onset of this nerve root compression syndrome originated from the events during the performance of the [FCE]." Therefore, according to Dr. Strait, "this would come under the auspices of [workers'] compensation." However, in correspondence from Dr. Strait dated January 19, 2016, he reversed his opinion after reviewing additional records, stating "I will rescind my previous opinion since it was based entirely on the patient's input," and opined instead that "it is clear that [Employee's] left arm pain did not result from an injury occurring during his performance of the [FCE]." On January 25, 2016, Employer denied the cervical injury claim, stating in the denial notice that the cervical injuries "are not compensable under this claim per opinion of authorized treating physician."

Following the filing of Employee's petition for benefit determination and a dispute certification notice, Employee filed a request for expedited hearing asking that a decision be rendered on the record without a hearing. Employee submitted an affidavit of Dr. Hodges with his request, wherein Dr. Hodges stated that he had reviewed the medical records of Dr. Smalley, Dr. Ashley, Dr. Thompson, and Dr. Strait and, considering all causes, it was his opinion that the FCE was the primary cause of the cervical injury and the need for the resulting treatment. After concluding that additional information was not needed to determine whether Employee would likely prevail at a hearing on the merits of the claim, the trial court issued an order denying benefits for Employee's alleged cervical injury, finding Employee had failed to present sufficient evidence to establish the occurrence of a compensable injury or aggravation. Employee has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

5

## Analysis

Employee raises two issues: whether Dr. Hodges is an authorized physician based upon Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii), and whether the trial court erred in failing to give greater weight to Dr. Hodges' causation opinion.

### *Whether Dr. Hodges is an Authorized Treating Physician*

Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) (2015) provides that "[w]hen necessary, the treating physician selected in accordance with subdivision (a)(3)(A) shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer." Here, on September 9, 2015, the authorized treating physician, Dr. Smalley, "recommend[ed] that [Employee] follow up with a cervical spine specialist after the EMG," noting in the report that Employee was "to see Jason C. Eck, DO . . . on or around 09/16/2015." The record on appeal is silent as to whether Dr. Smalley "immediately notif[ied] the employer" of his referral.[4] Subdivision 50-6-204(a)(3)(A)(ii) further provides that "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups." Employee argues that, because Employer did not provide a panel of physicians in response to Dr. Smalley's referral to Dr. Eck within three days, Employee became entitled to treat with Dr. Hodges, who then became the authorized physician. The trial court disagreed. For the reasons that follow, we also disagree.

The referral to Dr. Eck was included in the report of Employee's September 9, 2015 visit with Dr. Smalley. In that report, Dr. Smalley addressed both the work-related knee injury and the nonwork-related shoulder injury for which Dr. Smalley performed surgery in December 2014. Dr. Smalley placed Employee at maximum medical improvement for the knee injury at the September 9, 2015 office visit. The report noted that Employee had persistent complaints of pain and numbness in the left arm following the left shoulder surgery and "recommend[ed] that he follow up with a cervical spine specialist after the EMG for evaluation of his cervical spine." The report stated that Employee was "to see Jason C. Eck, DO . . . on or around 09/16/2015." There is no suggestion in the report that Employee's left arm or cervical complaints were related to the August 25, 2015 FCE or otherwise connected to Employee's compensable left knee injury. Moreover, the report of Employee's preceding visit with Dr. Smalley on July 29, 2015 stated that Employee "is here for follow up on his left shoulder examination under anesthesia, left shoulder arthroscopy, massive full-thickness supraspinatus and

---

[4] Dr. Smalley's report does not use the term "referral," but instead "recommends" that Employee follow up with a cervical spine specialist. No issue has been raised questioning Dr. Smalley's use of the term "recommends," or whether the recommendation constituted a "referral" as the term is used in section 50-6-204(a)(3)(A). Employer's brief on appeal acknowledges a "referral" to the specialist, and for purposes of this appeal, we treat the terms as if they are synonymous.

6

infraspinatus rotator cuff repair." At the July 29, 2015 visit, Employee reported neck pain and "some numbness/tingling down into the hand along the median nerve distribution," for which Dr. Smalley noted that "[i]f this persists/worsens we will need to order an EMG to evaluate further." The EMG was scheduled for September 9, 2015, following Employee's appointment with Dr. Smalley the same day.

The trial court concluded that, while section 50-6-204(a)(3)(A)(ii) allows a referral physician to become the authorized physician if an employer fails to act on a referral, the statutory provision did not apply under the particular circumstances of the case. The record is clear that Dr. Smalley was an "authorized treating physician" in accordance with the Tennessee Workers' Compensation Law only with respect to Employee's compensable left knee injury. Coincidentally, he was also Employee's personal medical specialist for treatment of an unrelated left shoulder condition. Thus, although the authorized treating physician made the referral to Dr. Eck, the office note gives no indication of a referral for a condition Dr. Smalley believed was related to the left knee injury, the FCE, or to any other work-related incident. Moreover, the record on appeal gives no indication that Employee gave notice of his alleged cervical injury until he presented to the on-site nurse for clearance to return to work from his knee injury on September 25, 2015, more than two weeks after the referral was made. Thus, even if the referral had been to Dr. Hodges, the circumstances were not such that Employer was deemed to have accepted the referral as contemplated in the statute. Accordingly, we find no merit in Employee's first issue.

*Whether Dr. Hodges' Opinion is Entitled to Greater Weight than Dr. Strait's Opinion*

Employee contends that Dr. Hodges' causation opinion is entitled to greater weight than Dr. Strait's opinion. Employee emphasizes that Dr. Hodges treated Employee for a substantial period of time, that he performed the surgical fusion of employee's cervical spine, that he reviewed all of the records of the physicians addressed in the trial court's Expedited Hearing Order and "[p]resumably, he has considered the same discrepancies noted in the Expedited Hearing Order." Employee concludes, "therefore, [the opinion] of the medical expert who examined and reviewed the facts relevant to [Employee] on substantially more occasions than Dr. Strait, should control."

It is well established that a "trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). When there are conflicting medical opinions "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

7

Here, the trial judge determined that Dr. Strait's opinion, although not entitled to a presumption of correctness on the causation issue, was entitled to greater weight than Dr. Hodges' opinion. The trial court "[found] it troubling that on August 13, 2015, [Employee] reported to Dr. Thompson, his chiropractor, that he sustained an injury on '*July 22, 2015* when his left shoulder blade, *neck*, left hand and little finger and ring finger began hurting and became weak *after performing FCE at work*.'" (Emphasis in original). Noting that Employee "did not undergo the FCE for his work-related knee injury until August 25, 2015," and that "the record is silent as to why [Employee] reported sustaining a neck injury during a FCE twelve days before it actually occurred," the trial court denied Employee's request for medical benefits related to his cervical condition, stating that its decision rendered the issue concerning temporary disability benefits moot.

Employee asserts the trial court's opinion is not supported by substantial and material evidence. Identifying what Employee terms the "substantial and material evidence" supporting his claim, he asserts the trial court "ignore[d] all of this evidence in favor of Dr. Strait based on the singular record of Dr. Ashley,"[5] contending "[t]his reasoning is faulty for two reasons." First, Employee asserts in his brief that "Dr. Strait is not a reputable medical expert in the Workers' Compensation community," and that "[h]e is known primarily as an advocate for the insurance companies and employers of Chattanooga." The record on appeal is devoid of any evidence to support Employee's accusations. Furthermore, we note that Employee selected Dr. Strait from a panel of three physicians for the evaluation.

The second reason Employee presents to support his assertion that the trial court's reasoning is faulty is the court's statement that it found "troubling" the August 13, 2015 report of the chiropractor containing a reference to an FCE that was not performed until August 25, 2015. Employee argues "[i]t is absurd to assume that someone intended (or actually did) complain of an injury caused by an event that had not yet occurred." Stating that "[a] much more rational explanation of this is that some typographical error or misunderstanding in communication took place," Employee asserts that "Dr. Thompson's office confirmed that some type of error in the record is most likely the case and will confirm that in writing during the proceedings of this claim." As we have previously stated, "[o]ur role in evaluating a trial court's decision on appeal entails taking into

---

[5] The record on appeal includes reports of two office visits with Dr. Ashley, one of which occurred on March 30, 2015, and involved complaints unrelated to a knee, left shoulder, or neck injury, and the second, dated August 31, 2015, which noted Employee's complaints of upper back pain with radiation and numbness into the left arm three days after performing the August 25, 2015 FCE. It is unclear whether the statement in Employee's brief that "the trial court ignore[d] all of this evidence . . . based on the singular record of Dr. Ashley" was intended to refer to Dr. Thompson and the August 13, 2015 report that documented additional complaints "after preforming [sic] FCE at work." Irrespective of which record Employee intended to reference, the evidence identified by Employee has not been ignored as Employee asserts.

8

account information the trial court had before it at the time the trial court decided the issues, as opposed to considering information the parties may seek to present on appeal following an adverse decision." *MacDonald v. Greene Cnty. Sheriff's Dept.*, No. 2015-02-0077, 2015 TN Wrk. Comp. App. Bd. LEXIS 33, at *13-14 (Tenn. Workers' Comp. App. Bd. Sept. 4, 2015).

Here, there is no evidence in the record suggesting there is a typographical error in Dr. Thompson's report, and there is no evidence in the record suggesting a misunderstanding in communication as suggested by Employee. Moreover, we note Employee requested the trial court to enter an interlocutory order based on a review of the file rather than to set the matter for a hearing and provide him the opportunity to testify or offer other evidence for the court's consideration. *See* Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(c) (2015). Furthermore, as noted by the trial court, when Employee was evaluated by Dr. Strait, he told Dr. Strait "[h]e had never experienced this type of pain before," referring to pain radiating down his left arm in a radicular fashion after the FCE. After reviewing the chronology of Employee's symptoms following the January 4, 2016 report of the independent medical evaluation, Dr. Strait rescinded the opinion expressed in the report, stating "it is clear that [Employee's] left arm pain did not result from an injury occurring during his performance of the [FCE]," and that "the medical records clearly indicate that his left arm pain was not the result of him participating in the [FCE] which occurred on August 25, 2015." Similarly, the history Employee gave to Dr. Hodges conflicts with the previous history Employee provided to Dr. Smalley. The report of the September 22, 2015 initial visit with Dr. Hodges noted that Employee "states *all* the left shoulder pain and weakness began while doing the [FCE]" (emphasis added), which contradicts the information in the report of Employee's July 29, 2015 visit with Dr. Smalley wherein Employee reported "some neck pain and numbness/tingling down into the hand." The record clearly demonstrates that Employee was suffering from left shoulder complaints prior to participating in the FCE. Thus, we find that the trial court's determinations on these issues were supported by substantial and material evidence.

Finally, there is a presumption that the findings and conclusions of the trial court are correct, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7) (2015). After a careful review of the record, we find there is no basis in the record from which we can conclude that the evidence preponderates against the trial court's findings and conclusions.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial

court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board

10

FILED

August 16, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 7:55 A.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Robert Poellnitz | ) | Docket No.  2016-01-0135 |
| | ) | |
| v. | ) | |
| | ) | State File No.  64362-2014 |
| Resolute Forest Products, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 16th day of August, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **G. Brent Burks** | | | | | X | brentburks@mcmahanlawfirm.com<br>tim@mcmahanlawfirm.com |
| **Bridget J. Willhite** | | | | | X | bridget@harrodlawfirm.com<br>melissa@harrodlawfirm.com |
| **Audrey A. Headrick** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov